IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, as Securities Intermediary, | § § § § | **CASE NO. 14-CV-562** |
| Plaintiff, | § § § | |
| vs. | § § § | **DEMAND FOR JURY TRIAL** |
| SUN LIFE ASSURANCE COMPANY OF CANADA, | § § § | |
| Defendant. | § § § | |

## COMPLAINT

Plaintiff U.S. Bank National Association, as Securities Intermediary ("Plaintiff"), hereby files this complaint against defendant Sun Life Assurance Company of Canada ("Sun Life" or "Defendant") and alleges as follows:

## NATURE OF ACTION

1.      This is an action for breach of contract and bad faith, arising from Defendant Sun Life's knowing and objectively unreasonable failure to pay Plaintiff the $6,000,000 death benefit owed under a Wisconsin life insurance policy Sun Life issued on the life of Charles Margolin (the "Policy").

2.      Plaintiff is the sole owner and beneficiary of the Policy.  Sun Life issued the Policy in Wisconsin in 2007 to a trust organized under Wisconsin law and administered by its trustee from its offices in Madison, Wisconsin.  Plaintiff became the owner and beneficiary of the Policy four years later in 2011, as Sun Life acknowledged when it processed and approved change of ownership and beneficiary forms for the Policy.  During the seven years since issuing

- 1 -

the Policy, Sun Life has accepted and retained substantial premiums totaling $2,446,836.00, including $1,068,566 paid in premium since the change of ownership to Plaintiff was processed and approved by Sun Life.

3.     In the Policy, Sun Life promised to pay the death benefit to the Policy's beneficiary – here Plaintiff – upon receipt of proof of the insured's death.  Plaintiff provided Sun Life with Charles Margolin's death certificate and a completed proof of claim on the form required by Sun Life on May 30, 2014.  Nevertheless, almost three months later, Sun Life still has not paid the $6,000,000 death benefit owed under the Policy.

4.     Sun Life's failure to pay Plaintiff these contractually owed funds is a breach of contract.  Additionally, because Sun Life failed to pay the benefits due under the Policy within 30 days of receipt of Plaintiff's claim, Plaintiff is also entitled to interest on the overdue payment of $6,000,000 at the statutory rate of 12 percent per annum pursuant to Wisconsin Statute § 628.46.

5.     Not only has Sun Life breached the Policy, but its failure to pay the death benefit to Plaintiff constitutes bad faith under Wisconsin law, which provides that an insurer engages in bad faith if it fails to pay a claim without reasonable justification while knowing or recklessly disregarding the fact that it has no reasonable basis for failing to pay.

6.     Sun Life's representative has admitted to Plaintiff's representative that Sun Life has failed to pay Plaintiff's claim because Sun Life is investigating the initial procurement of the Policy and whether any misrepresentations were made during the application process *only now* that Plaintiff has made a claim for benefits due under the Policy (as opposed to when the insured and the original owner applied for the Policy).  Plaintiff, as noted above, became the owner and beneficiary four years after the Policy was issued and was not involved in the Policy application

- 2 -

and procurement process.  Based on Sun's Life own admission, it is clear that it has engaged in bad faith.  Specifically, Sun Life has admitted that it has refused to pay Plaintiff's claim while it "investigates" defenses *that Wisconsin law explicitly prohibits Sun Life from asserting*.

7.     Both Wisconsin law and the terms of the Policy itself provide that Sun Life cannot contest the validity of the Policy based on an alleged misrepresentation after the Policy has been in force for two years.  Here, the Policy was issued more than seven years ago and has been in force continuously throughout that period.  The Policy is therefore incontestable as a matter of law.  Thus, Sun Life is barred from denying Plaintiff's claim based on any alleged misrepresentation.

8.     Wisconsin law also explicitly prohibits an insurer at any time from seeking to have a policy declared void for an alleged lack of "insurable interest" at policy inception.  Sun Life has thus failed to pay Plaintiff's claim based on a ground Wisconsin law expressly precludes Sun Life from relying on in denying a claim.

9.     It is textbook bad faith for an insurer to refuse to pay a claim based on a ground that is directly contrary to, and foreclosed by, controlling law.  By its own admission, that is what Sun Life has done here.  Sun Life has engaged in blatant bad faith, with an intentional disregard for Plaintiff's rights, thus entitling Plaintiff to punitive damages and attorneys' fees.

**THE PARTIES**

10.     Plaintiff U.S. Bank National Association is a national banking association with its main office in Ohio.

11.     Upon information and belief, and based on its own pleadings in other matters, defendant Sun Life is a life insurance company organized under the laws of Canada, with its

principal place of business at One Sun Life Executive Park, Wellesley Hills, Massachusetts, and is a citizen of Massachusetts.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 based on the complete diversity of citizenship between Plaintiff and Defendant and because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

13.     This Court has personal jurisdiction over Defendant, as among other reasons, it has continuous and systematic contacts with Wisconsin, and it issued the Policy in the State of Wisconsin, to an insurance trust organized under Wisconsin law, and managed by its trustee from its offices in Madison, Wisconsin, while intending to serve the life insurance market in Wisconsin.  Defendant has availed itself of the protection of Wisconsin law by issuing the Policy pursuant to Wisconsin law and insurance regulation.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims occurred in this District.  Among other things, Sun Life issued the Policy within this District, the insurance trust to which the Policy was issued was managed through its trustee within this District, and the Policy was applied for, delivered, accepted and placed in force in this District.

## FACTUAL BACKGROUND

### A.     Sun Life's Issuance of the Policy in Wisconsin

15.     On or about January 5, 2007, Charles Margolin created the Charles B. Margolin 2007-1 Insurance Trust Dated 1-15-07 (the "Margolin Trust").  The Margolin Trust was formed under the laws of Wisconsin and had its trust situs in Wisconsin.  The trustee of the Margolin

Trust was Dewitt Ross & Stevens S.C. (the "Trustee").  The Trustee administrated the Margolin Trust from its offices in Madison, Wisconsin.

16.     The Margolin Trust and Charles Margolin submitted an application to Sun Life (the "Application") seeking a $6,000,000 policy on Charles Margolin's life.  The Application designated the Margolin Trust as the proposed owner and beneficiary of the Policy and correctly listed the Margolin Trust as having been established in Wisconsin, organized under Wisconsin law, and as having an address in Madison, Wisconsin.  The Trustee signed the Application, on behalf of the Margolin Trust, in Wisconsin and so indicated in the Application.

17.     Sun Life issued the Policy on a Wisconsin policy form.  This is explicit from the form number of the first page of the Policy bearing the identifier "1WI."

18.     In exchange for the agreement to pay premiums and other consideration, Sun Life subsequently issued and delivered the Policy to the Margolin Trust.  The face amount of the Policy is $6,000,000.  The Policy's "Issue Date" is January 30, 2007 and the "Policy Effective Date" is February 28, 2007.

19.     Sun Life delivered the Policy to the Margolin Trust in Madison, Wisconsin and required that the Margolin Trust sign a "Delivery Receipt Form" so confirming.  The Trustee signed the Delivery Receipt Form on behalf of the Margolin Trust in Madison, Wisconsin on February 13, 2007 and so indicated in the Delivery Receipt Form.

20.     The Policy provides – in bold letters on the front page – that Sun Life will "pay the Beneficiary such amounts as are due and payable upon receipt of Due Proof of the Insured's death" and that "Policy Proceeds are payable upon receipt of Due Proof of the Insured's death."

21.     The Policy explicitly provides, in a section labeled "Incontestability," that "[A]fter this Policy has been in force during the lifetime of the Insured for a period of two years from its Issue Date, we [Sun Life] cannot contest it except for nonpayment of premiums."

**B.     Plaintiff Is The Sole Owner and Beneficiary of the Policy**

22.     Plaintiff became the sole owner and beneficiary of the Policy in 2011.  On May 20, 2011, (a) the Margolin Trust submitted to Sun Life an "Ownership Change Request" designating Plaintiff as the new owner of the Policy and (b) Plaintiff, as the Policy's new owner, submitted a "Beneficiary Change Request" changing the Policy's beneficiary to Plaintiff.  Sun Life acknowledged Plaintiff's status as the Policy's new owner and beneficiary and recorded these changes in its records.  In a May 25, 2011 letter to Plaintiff, Sun Life confirmed: "Ownership of the policies listed above was transferred to U.S. Bank National Association as Securities Intermediary in accordance with the Ownership Change Request forms."  The letter further confirmed: "Our records have now been updated to reflect U.S. Bank National Association as Securities Intermediary as Primary Beneficiary."

23.     All premiums due under the Policy, totaling $2,446,836.00, have been paid in accordance with the terms of the Policy (including $1,068,566 paid in premium since the change of ownership to Plaintiff was processed by Sun Life), and Plaintiff has duly performed all other conditions of the Policy on its part.  The Policy remained in force at the time of the Insured's death.

**C.     Sun Life Breaches The Policy And Engages In Bad Faith**

24.     Charles Margolin died on April 3, 2014, more than seven years after the Policy was issued.  Sun Life accepted premiums throughout that entire period.

25.     Plaintiff, through its representatives, provided Sun Life with Charles Margolin's death certificate and submitted Plaintiff's claim for benefits due under the Policy, on Sun Life's prescribed claims forms, on May 30, 2014.

26.     Sun Life has refused to pay Plaintiff the $6,000,000 owed under the Policy even though the Policy provides that Sun Life will make such payment upon receiving proof of the insured's death.

27.     Plaintiff, through its representatives, has repeatedly requested that Sun Life honor the Policy and provide payment.  Sun Life has refused.  For example, on July 21, 2014, weeks after payment became overdue as a matter of Wisconsin law, Sun Life sent Plaintiff a letter stating "We are currently in the process of obtaining additional information needed to make the claim determination."  This is patently untrue.  Sun Life knew and acknowledged three years earlier that Plaintiff is the sole owner and beneficiary of the Policy.  Sun Life also received proof of Charles Margolin's death and the completed and executed claim form weeks earlier.  That is the only information that Sun Life needed to make its "claim determination" and honor its promise and obligation under the Policy to pay the benefits due.  Sun Life unreasonably and in bad faith has refused to make such payment.

28.     After a representative of Plaintiff followed-up regarding the status of this "claim determination," an attorney for Sun Life asserted to Plaintiff's representative that Sun Life required additional information regarding the initial procurement of the Policy so that it could determine whether any inaccurate information had been submitted to Sun Life during the underwriting process.  In an email following up on this conversation, Sun Life's attorney stated that "Sun Life is in the process of reviewing the death claim in the above-referenced matter and had a few questions about the origination of the policy.  In particular, Sun Life is attempting to

confirm that Charles Margolin was the source of the premium and that the policy was not funded through premium financing or some other third party source." The information demanded by Sun Life's attorney makes clear that Sun Life has failed to pay Plaintiff's claim without any reasonable basis and with an intentional disregard of Plaintiff's rights.

29.     The Policy explicitly provides that Sun Life cannot contest the Policy based on any alleged misrepresentation after it has been in force for two years. It states: "After this Policy has been in force during the lifetime of the Insured for two years from its Issue Date, we [Sun Life] cannot contest it except for nonpayment of premium." This explicit contractual promise is required by Wisconsin Statute § 632.46, which provides that except for the nonpayment of premiums, "no individual life insurance policy may be contested after it has been in force from the date of issue for 2 years during the lifetime of the person whose life is at risk."

30.     Sun Life issued the Policy more than seven years ago. As such, Sun Life's time for contesting the Policy based on any alleged misrepresentation *expired more than five years ago*. There is no reasonable basis for Sun Life to refuse to pay Plaintiff's claim based on an alleged misrepresentation and its failure to pay Plaintiff's claim while it "investigates" these grounds is thus clear bad faith under Wisconsin law.

31.     For more than seven years, Sun Life has been issuing premium invoices for the Policy and annual policy statements, and has been receiving and enjoying the benefit of the $2,446,836 of premiums that have been paid on the Policy. It is disingenuous of Sun Life to conduct any investigation associated with the origination of the Policy, or otherwise, seven years after Policy issuance, and particularly to engage in "post-loss underwriting" now that the insured has died and the death benefit has become due and payable.

32.     Wisconsin law also prohibits an insurer from attempting to escape its coverage obligations based on an alleged lack of insurable interest.  Wisconsin Statute § 631.07(4) expressly provides that "No insurance policy is invalid merely because the policyholder lacks an insurable interest or because consent was not given."  When enacting this statute, Wisconsin's legislature explained the state's strong public policy against allowing insurers to deny claims based on alleged lack of insurable interest: "Insurable interest makes sense as an underwriting restriction but not as a prerequisite to the validity of an insurance policy….The best way to discourage insurers from issuing insurance policies to persons without insurable interest is to make them pay if they do, not to permit them freely to issue such policies knowing that they have a good public policy defense that lets them off the hook whenever a loss occurs."

33.     Accordingly, to the extent Sun Life's failure to pay Plaintiff's claim for benefits is based on a purported need to "investigate" insurable interest, such refusal to pay likewise lacks any reasonable basis under Wisconsin law.

34.     Upon information and belief, Sun Life issued another insurance policy on Charles Margolin's life in the amount of $2 million.  Upon information and belief, Sun Life timely paid the $2 million claim for benefits upon receiving proof of Charles Margolin's death.

35.     Sun Life's refusal to pay Plaintiff's claim lacks any reasonable basis, as Sun Life knows or has chosen to recklessly disregard.  Additionally, by refusing to pay Plaintiff's claim based on grounds Wisconsin statutes explicitly prohibit Sun Life from asserting, Sun Life has acted in an extreme and outrageous manner with absolutely no regard for Plaintiff's rights.

## COUNT I

## BREACH OF CONTRACT

36.     Plaintiff realleges and incorporates by reference each of the allegations made at paragraphs 1 through 35, inclusive.

37.     The Policy constitutes a valid and enforceable written contract that requires Sun Life to pay benefits due to Plaintiff.  Plaintiff, as the sole owner and beneficiary of the Policy, is entitled to receive the benefits due under the Policy.

38.     Plaintiff has complied with all applicable conditions of the Policy including paying all premiums due under the Policy.

39.     Charles Margolin died on April 3, 2014 and Sun Life was provided with proof of Charles Margolin's death on May 30, 2014.  Therefore, Sun Life was obligated under the Policy to pay the $6,000,000 death benefit to Plaintiff.

40.     Sun Life has breached its obligations under the Policy by failing to pay Plaintiff the $6,000,000 death benefit due under the Policy, plus interest, as the Policy requires.

41.     As a result of Sun Life's breach of the Policy, Plaintiff has been damaged in an amount of $6,000,000, plus interest.

## COUNT II

## STATUTORY PREJUDGMENT INTEREST FOR UNTIMELY PAYMENT

42.     Plaintiff realleges and incorporates by reference each of the allegations made at paragraphs 1 through 41, inclusive.

43.     Pursuant to Wisconsin Statute § 628.46, Sun Life was obligated to make a timely payment of the death benefit to Plaintiff.  According to the statute, a claim is overdue if not paid

by the insurer within 30 days of being provided written notice of the fact of a covered loss and the amount of the loss.

44.     Plaintiff provided Sun Life with written notice of a covered loss as well as the amount of the loss when Plaintiff informed Sun Life of Charles Margolin's death.  It provided additional material in support of the claim for death benefits on May 30, 2014.

45.     Sun Life has failed to pay Plaintiff the benefits due under the Policy within 30 days of receiving written notice of the loss.  As such, payment from Sun Life is overdue and Plaintiff is entitled to interest on the $6,000,000 due under the Policy at the statutory rate of 12 percent per year, which continues to accrue.

## COUNT III

## BAD FAITH

46.     Plaintiff realleges and incorporates by reference each of the allegations made at paragraphs 1 through 45, inclusive.

47.     By failing to pay benefits due under the Policy to Plaintiff, Sun Life has acted in an arbitrary and intentional manner.  Sun Life's failure to pay the contractually owed benefits is unreasonable, unjustified and has no basis in fact or law.  Further, this lack of any reasonable basis for failing to pay the claim was known by or recklessly disregarded by Sun Life.  As described in detail herein, Sun Life has refused to pay death benefits while it "investigates" coverage defenses that are explicitly foreclosed under Wisconsin law.

48.     Plaintiff has suffered damages due to Sun Life's bad faith conduct in that it has been deprived of the insurance coverage for which it paid and is being forced to incur litigation expenses and costs in connection with enforcing the Policy and recovering the death benefit from Sun Life.

- 11 -

49.     Additionally, Sun Life's conduct in refusing to pay contractually owed benefits to Plaintiff constitutes oppressive, outrageous and malicious conduct – and was taken in total disregard of Plaintiff's rights – and entitles Plaintiff to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment ordering as follows:

50.     Awarding Plaintiff damages for breach of contract in an amount not less than $6,000,000, plus interest and other consequential damages;

51.     Awarding Plaintiff prejudgment interest pursuant to Wisconsin Statute § 628.46 at the statutory rate of 12 percent per annum;

52.     Awarding Plaintiff compensatory damages, attorneys' fees and punitive damages due to Sun Life's bad faith;

53.     Granting Plaintiff its costs of suit, expenses and reasonable attorneys' fees; and

54.     Granting Plaintiff such other, further and different relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff requests a trial by jury on all issues.

Dated:  August 13, 2014.

_____*s/ Eric J. Wilson*_____

Eric J. Wilson
GODFREY & KAHN S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, Wisconsin 53701-2719
Tel:  (608) 257-3911
E-mail:  ewilson@gklaw.com

and

John E. Failla (applying for *pro hac vice* admission)
Nathan R. Lander (applying for *pro hac vice* admission)
PROSKAUER ROSE LLP
11 Times Square
New York, New York 10036
Tel:  (212) 969-3000
E-mails:  jfailla@proskauer.com
                nlander@proskauer.com

ATTORNEYS FOR PLAINTIFF
U.S. BANK NATIONAL ASSOCIATION, as Securities
Intermediary