IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, | § | |
| as Securities Intermediary, | § | **CASE NO. 14-CV-562** |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| SUN LIFE ASSURANCE COMPANY OF CANADA, | § | |
| | § | |
| | § | |
| Defendant. | § | |

---

**AMENDED ANSWER OF SUN LIFE ASSURANCE COMPANY OF CANADA
TO THE COMPLAINT, TOGETHER WITH
AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

Defendant Sun Life Assurance Company of Canada ("Sun Life") hereby files its

amended answer to the complaint of Plaintiff U.S. Bank, National Association, as Securities

Intermediary ("Plaintiff"), together with its affirmative defenses and counterclaims, and alleges

as follows:

**NATURE OF ACTION**

1.      Denied.  This paragraph contains Plaintiff's characterizations of the nature of this

action and the claims asserted.

2.      Admitted in part.  Denied in part.  It is admitted that, in 2007, Sun Life issued a

$6 million face amount policy insuring the life of Charles B. Margolin (the "Policy").  It is

admitted that the owner of record of the Policy at the time of issuance was the Charles B.

Margolin Ins. Trust, dated 1/15/07 (the "Trust").  It is admitted that the trustee of the Trust was

represented to be Dewitt Ross & Stevens, S.C., which, upon information and belief, is a

Wisconsin entity.  It is admitted that Sun Life acknowledged that the owner and beneficiary of

record for the Policy was changed to Plaintiff in 2011.  It is further admitted that premiums were

received sufficient to keep the Policy, to the extent it is not void *ab initio*, from terminating. Sun Life lacks knowledge and information at this time sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and they are therefore denied. Specifically, Sun Life lacks knowledge and information at this time sufficient to form a belief as to whether the Policy was ever valid, whether the Trust was validly organized under Wisconsin law, whether the transaction purporting to transfer ownership and beneficiary rights to the Plaintiff was valid, and whether the Plaintiff is the sole owner and beneficiary of the Policy, and these allegations are therefore denied. All remaining allegations are denied.

3.      Admitted in part. Denied in part. The allegations in this paragraph refer to the Policy which, if not void *ab initio*, is a document that speaks for itself. Any and all inaccurate interpretations or characterizations of the Policy, to the extent it is valid, are denied. It is admitted that Sun Life received a copy of Mr. Margolin's death certificate and a proof of claim form, and that Sun Life continues to evaluate the claim. Sun Life denies that Plaintiff submitted the complete proof of claim required by the Policy or that Sun Life has acted improperly. At the present time, it is, upon information and belief, fairly debatable whether the Policy was validly procured in good faith for the security or indemnity of Mr. Margolin, or whether it was procured as an illegal wagering contract that is void from inception pursuant to Wisconsin Statute § 895.055. It was, therefore, reasonable for Sun Life to attempt to gather information in connection with its review of the claim in order to confirm the validity of the Policy, which is precisely what Sun Life was doing when Plaintiff commenced this action. Moreover, it was reasonable for Sun Life, to the extent the Policy is determined to be valid, to gather information in connection with its review of the claim in order to confirm that Wisconsin Statute § 631.07(4) supports payment to Plaintiff as opposed to another party having an insurable interest in the life

of Mr. Margolin, which is precisely what Sun Life was doing when Plaintiff commenced this action.  Sun Life has acted reasonably in its review of the claim and in attempting to determine its obligations, if any, with respect to the purported policy.  Moreover, to the extent it is valid, the Policy states that proceeds will be paid upon receipt of Due Proof, which is defined as "[s]uch evidence as we may reasonably require in order to establish the Policy Proceeds or any other benefits are due and payable."  Despite a request from Sun Life, Plaintiff has refused to provide information reasonably required to make the determinations discussed above, and has therefore not submitted the Due Proof required by the Policy.  All remaining allegations are denied.

4.      The allegations in this paragraph constitute conclusions of law to which no response is required.  To the extent a response is required, these allegations are denied.

5.      The allegations in this paragraph constitute conclusions of law to which no response is required.  To the extent a response is required, these allegations are denied.

6.      Admitted in part.  Denied in part.  It is admitted that the owner and beneficiary of record for the Policy was changed to Plaintiff in 2011.  Sun Life lacks knowledge and information at this time sufficient to form a belief as to whether the transaction purporting to transfer ownership and beneficiary rights to the Plaintiff was valid.  Sun Life further lacks knowledge and information at this time sufficient to form a belief as to whether Plaintiff was, or was not, involved in the procurement of the Policy.  It is admitted that Sun Life continues to evaluate the claim.  Sun Life denies that it has acted improperly.  At the present time, it is, upon information and belief, fairly debatable whether the Policy was validly procured in good faith for the security or indemnity of Mr. Margolin, or whether it was procured as an illegal wagering contract that is void from inception pursuant to Wisconsin Statute § 895.055.  It was, therefore,

reasonable for Sun Life to attempt to gather information in connection with its review of the claim in order to confirm the validity of the Policy, which is precisely what Sun Life was doing when Plaintiff commenced this action.  Moreover, it was reasonable for Sun Life, to the extent the Policy is determined to be valid, to gather information in connection with its review of the claim in order to confirm that Wisconsin Statute § 631.07(4) supports payment to Plaintiff as opposed to another party having an insurable interest in the life of Mr. Margolin, which is precisely what Sun Life was doing when Plaintiff commenced this action.  Sun Life has acted reasonably in its review of the claim and in attempting to determine its obligations, if any, with respect to the purported policy.  To the extent the remaining allegations contained in this paragraph are conclusions of law, they are denied.  All remaining allegations are denied.

7.      Admitted in part.  Denied in part.  The allegations in this paragraph refer to the Policy which, if not void *ab initio*, is a document that speaks for itself.  Any and all inaccurate interpretations or characterizations of the Policy, to the extent it is valid, are denied.  It is admitted only that Sun Life issued the Policy in 2007.  Sun Life lacks knowledge and information at this time sufficient to form a belief as to whether the Policy was ever valid, and therefore any allegation that the Policy was validly issued is denied.  To the extent the allegations contained in this paragraph are conclusions of law, they are denied.  All remaining allegations are denied.

8.      The allegations in this paragraph constitute conclusions of law to which no response is required.  To the extent a response is required, these allegations are denied.  By way of further answer, Sun Life specifically denies that it has ever denied or refused to pay Plaintiff's claim; rather, it was in the process of evaluating Plaintiff's claim when Plaintiff commenced this action.

- 4 -

9.      The allegations in this paragraph constitute conclusions of law to which no response is required.  To the extent a response is required, these allegations are denied.  By way of further answer, Sun Life specifically denies that it has ever denied or refused to pay Plaintiff's claim; rather, it was in the process of evaluating Plaintiff's claim when Plaintiff commenced this action.

## THE PARTIES

10.      Admitted in part.  Denied in part.  It is admitted, upon information and belief, that Plaintiff is a national banking association with its principal place of business located at 425 Walnut Street, Cincinnati, Ohio 45202.  Sun Life lacks knowledge and information at this time sufficient to form a belief as to the location of Plaintiff's "main office."

11.      Admitted in part.  Denied in part.  Sun Life Assurance Company of Canada is a life insurance company organized under the laws of Canada, with its principal place of business at One Sun Life Executive Park, Wellesley Hills, MA and is a citizen of Massachusetts.  All remaining allegations are denied.

## JURISDICTION AND VENUE

12.      Admitted, upon and information belief.

13.      Admitted in part.  Denied in part.  It is admitted that the owner of record at the inception of the Policy was the Trust and, upon information and belief, the named trustee is a Wisconsin entity.  Sun Life lacks knowledge and information at this time sufficient to form a belief as to whether the Policy was ever valid or whether the Trust was validly organized under Wisconsin law, and thus denies any allegation as to the validity of the Policy or the Trust.  Upon information and belief, it is admitted that the Policy, to the extent it is not void *ab initio*, was issued in the State of Wisconsin.  To the extent the allegations contained in this paragraph are

conclusions of law, they are denied.  Sun Life lacks knowledge and information at this time sufficient to form a belief as to the truth of the remaining allegations.

14.     Admitted in part.  Denied in part.  It is admitted that the owner of record at the inception of the Policy was the Trust and, upon information and belief, the named trustee is a Wisconsin entity.  Sun Life lacks knowledge and information at this time sufficient to form a belief as to whether the Policy was ever valid or whether the Trust was validly organized under Wisconsin law, and thus denies any allegation as to the validity of the Policy or the Trust.  Upon information and belief, it is admitted that the Policy, to the extent it is not void *ab initio*, was issued in the State of Wisconsin.  To the extent the allegations contained in this paragraph are conclusions of law, they are denied.  Sun Life lacks knowledge and information at this time sufficient to form a belief as to the truth of the remaining allegations.

## FACTUAL BACKGROUND

### A.      Plaintiff's Allegations Regarding the Issuance of the Policy

15.     Admitted in part.  Denied in part.  It is admitted that, in 2007, Sun Life issued the Policy and the owner of record at the inception of the Policy, to the extent it is valid, was the Trust.  It is admitted that the trustee, as reflected on the insurance application pursuant to which the policy was issued, was Dewitt Ross & Stevens, which, upon information and belief, is a Wisconsin entity.  Sun Life lacks knowledge and information at this time sufficient to form a belief as to whether the Policy was ever valid or whether the Trust was validly organized under Wisconsin law, and thus denies any allegation as to the validity of the Policy or the Trust.  Sun Life further lacks knowledge and information at this time sufficient to form a belief as to the truth of all remaining allegations set forth, which are therefore denied.

16.     Admitted in part.  Denied in part. It is admitted that Sun Life received an application seeking a $6 million face amount policy insuring the life of Charles B. Margolin.  It

- 6 -

is admitted that, in 2007, Sun Life issued the Policy and that the record owner of the Policy at inception was the Trust.  The allegations in this paragraph refer to the application and/or the Policy (to the extent the Policy is not void *ab initio*), which are documents that speak for themselves.  Any and all inaccurate interpretations or characterizations of these documents are denied.  Sun Life lacks knowledge and information at this time sufficient to form a belief as to truth of the remaining allegations, which are therefore denied.  Specifically, Sun Life lacks knowledge and information sufficient to form a belief as to whether the Trust was validly organized under Wisconsin law, and therefore denies any allegations as to the validity of the Trust.

17.     Admitted in part.  Denied in part.  It is admitted that, in 2007, Sun Life issued the Policy.  Sun Life lacks knowledge and information at this time sufficient to form a belief as to whether the Policy was ever valid, and therefore denies any allegation as to the validity of the Policy.  The remaining allegations contained in this paragraph refer to the Policy, which, to the extent it was validly obtained, is a document that speaks for itself.  Any and all inaccurate interpretations or characterizations of the Policy, to the extent it is valid, are denied.

18.     Admitted in part.  Denied in part.  It is admitted that, in 2007, Sun Life issued the Policy and that the record owner of the Policy at inception was the Trust.  Sun Life lacks knowledge and information at this time sufficient to form a belief as to whether the Policy was ever valid or whether the Trust was validly organized under Wisconsin law, and thus denies any allegation as to the validity of the Policy or the Trust.  The remaining allegations contained in this paragraph refer to the Policy, which, to the extent it was validly obtained, is a document that speaks for itself.  Any and all inaccurate interpretations or characterizations of the insurance policy, to the extent it is valid, are denied.

19.     Admitted in part.  Denied in part.  It is admitted that Sun Life received a policy delivery receipt form bearing the signature of a representative of the trustee wherein it was represented that the policy had been delivered in Wisconsin.  Sun Life lacks knowledge and information at this time sufficient to form a belief as to truth of the remaining allegations.  Specifically, Sun Life lacks knowledge and information at this time sufficient to form a belief as to whether the Trust was validly organized under Wisconsin law, and thus denies any allegation as to the validity of the Trust or the trustee's capacity to execute the policy delivery receipt form.

20.     The allegations contained in this paragraph refer to the Policy, which, to the extent it is valid, is a document that speaks for itself.  Any and all inaccurate interpretations or characterizations of the Policy, to the extent it is valid, are denied.

21.     The allegations contained in this paragraph refer to the Policy, which, to the extent it is valid, is a document that speaks for itself.  Any and all inaccurate interpretations or characterizations of the Policy, to the extent it is valid, are denied.

**B.     <u>Plaintiff's Allegations Regarding Its Purported Ownership and Beneficiary Rights</u>**

22.     Admitted in part.  Denied in part.  It is admitted that Sun Life acknowledged that the owner and beneficiary of record for the Policy, to the extent it was valid, were changed in May 2011.  Sun Life, however, lacks knowledge and information at this time sufficient to form a belief as to whether the Trust was validly organized under Wisconsin law and whether the transaction purporting to transfer ownership and beneficiary rights to the Plaintiff was valid, and thus denies any allegations related to the same.  By way of further response, the remaining allegations contained in this paragraph refer to an ownership change request form, a beneficiary change request form and/or a letter Sun Life sent to Plaintiff on or about May 25, 2011.  Each of these documents speaks for itself.  Any and all inaccurate interpretations or characterizations of these documents are denied.

23.     Admitted in part.  Denied in part.  It is admitted that premiums were received sufficient to keep the Policy, to the extent it is not void *ab initio*, from lapsing.  To the extent the remaining allegations contained in this paragraph refer to the Policy, the Policy, to the extent it is valid, is a document that speaks for itself.  Any and all inaccurate interpretations or characterizations of this document are denied.  Sun Life lacks knowledge or information as to whether as to whether the Policy was ever validly issued, and therefore denies that the Policy was in force at the time of Mr. Margolin's death.  Moreover, Sun Life reasonably requested from Plaintiff information in furtherance of its attempt to confirm that the Policy was validly issued and/or that Wisconsin Statute § 631.07(4) supports payment to Plaintiff as opposed to another party having an insurable interest in the life of Mr. Margolin, and U.S. Bank refused to provide such information, choosing instead to commence this action.  Thus, Sun Life denies that the Plaintiff has duly performed all other conditions of the Policy.  All remaining allegations are denied.

**C.     Plaintiff's Allegations Regarding Sun Life's Conduct**

24.     Admitted in part.  Denied in part.  It is admitted, upon information and belief, that Mr. Margolin died on April 3, 2014.  It is admitted that the Policy was issued in 2007.  Sun Life lacks knowledge or information as to whether as to whether the Policy was ever validly issued, and therefore denies any allegations as to the validity of the Policy.  It is admitted that premiums were received sufficient to keep the Policy, to the extent it is valid, from terminating.

25.     Admitted in part.  Denied in part.  It is admitted that Sun Life received a copy of Mr. Margolin's death certificate and a proof of claim form.  Sun Life lacks knowledge or information as to whether as to whether the Policy was ever validly issued, and therefore denies any allegation that benefits were due under the Policy.  Sun Life further denies that Plaintiff submitted Due Proof required by the Policy.

26.     Denied.  Sun Life denies that it has refused to pay Plaintiff's claim, that Plaintiff submitted the complete proof of claim required by the Policy or that Sun Life has acted improperly.  At the present time, it is, upon information and belief, fairly debatable whether the Policy was validly procured in good faith for the security or indemnity of Mr. Margolin, or whether it was procured as an illegal wagering contract that is void from inception pursuant to Wisconsin Statute § 895.055.  It was, therefore, reasonable for Sun Life to attempt to gather information in connection with its review of the claim in order to confirm the validity of the Policy, which is precisely what Sun Life was doing when Plaintiff commenced this action. Moreover, it was reasonable for Sun Life, to the extent the Policy is determined to be valid, to gather information in connection with its review of the claim in order to confirm that Wisconsin Statute § 631.07(4) supports payment to Plaintiff as opposed to another party having an insurable interest in the life of Mr. Margolin, which is precisely what Sun Life was doing when Plaintiff commenced this action.  Sun Life has acted reasonably in its review of the claim and in attempting to determine its obligations, if any, with respect to the purported policy.  Moreover, to the extent it is valid, the Policy states that proceeds will be paid upon receipt of Due Proof, which is defined as "[s]uch evidence as we may reasonably require in order to establish the Policy Proceeds or any other benefits are due and payable."  Despite a request from Sun Life, Plaintiff has refused to provide information reasonably required to make the determinations discussed above, and has therefore not submitted the Due Proof required by the Policy.  To the extent the allegations contained in this paragraph refer to the Policy, the Policy, to the extent it is valid, is a document that speaks for itself.  Any and all inaccurate interpretations or characterizations of the Policy, to the extent it is valid, are denied.

27.     Admitted in part.  Denied in part.  It is admitted that the parties and their respective representatives have communicated and made requests and/or statements to one another.  To the extent the allegations contained in this paragraph refer to written communications between the parties, these are documents that speak for themselves.  Any and all inaccurate interpretations or characterizations of these written communications are denied.  It is also admitted that Sun Life acknowledged in 2011 that the record owner and beneficiary of the Policy had been changed to the Plaintiff.  Sun Life lacks knowledge and information at this time sufficient to form a belief as to whether the transaction purporting to transfer ownership and beneficiary rights to the Plaintiff was valid, and therefore denies the validity of the same.  It is also admitted that Sun Life received a copy of Mr. Margolin's death certificate and a proof of claim form.  By way further response, Sun Life denies that it has refused to pay Plaintiff's claim, that Plaintiff submitted the complete proof of claim required by the Policy or that Sun Life has acted improperly.  At the present time, it is, upon information and belief, fairly debatable whether the Policy was validly procured in good faith for the security or indemnity of Mr. Margolin, or whether it was procured as an illegal wagering contract that is void from inception pursuant to Wisconsin Statute § 895.055.  It was, therefore, reasonable for Sun Life to attempt to gather information in connection with its review of the claim in order to confirm the validity of the Policy, which is precisely what Sun Life was doing when Plaintiff commenced this action.  Moreover, it was reasonable for Sun Life, to the extent the Policy is determined to be valid, to gather information in connection with its review of the claim in order to confirm that Wisconsin Statute § 631.07(4) supports payment to Plaintiff as opposed to another party having an insurable interest in the life of Mr. Margolin, which is precisely what Sun Life was doing when Plaintiff commenced this action.  Sun Life has acted reasonably in its review of the claim and in

attempting to determine its obligations, if any, with respect to the purported policy.  Moreover, to the extent it is valid, the Policy states that proceeds will be paid upon receipt of Due Proof, which is defined as "[s]uch evidence as we may reasonably require in order to establish the Policy Proceeds or any other benefits are due and payable."  Despite a request from Sun Life, Plaintiff has refused to provide information reasonably required to make the determinations discussed above, and has therefore not submitted the Due Proof required by the Policy.  To the extent the allegations contained in this paragraph refer to the Policy, the Policy, to the extent it is valid, is a document that speaks for itself.  Any and all inaccurate interpretations or characterizations of the Policy, to the extent it is valid, are denied.  To the extent the remaining allegations in this paragraph constitute conclusions of law, they are denied.  All remaining allegations are denied.

28.      Admitted in part.  Denied in part.  It is admitted that the parties and their respective representatives have communicated and made requests and/or statements to one another.  To the extent the allegations contained in this paragraph refer to written communications between the parties, these are documents that speak for themselves.  Any and all inaccurate interpretations or characterizations of these written communications are denied.  By way of further response, the e-mail with Sun Life's attorney to which Plaintiff refers goes on to state:  "If you or your client could assist in providing this information, we are hopeful that it would expedite Sun Life's review;" however, no information was ever provided by Plaintiff.  By way further response, Sun Life denies that it has refused to pay Plaintiff's claim, that Plaintiff submitted the complete proof of claim required by the Policy or that Sun Life has acted improperly.  At the present time, it is, upon information and belief, fairly debatable whether the Policy was validly procured in good faith for the security or indemnity of Mr. Margolin, or

whether it was procured as an illegal wagering contract that is void from inception pursuant to Wisconsin Statute § 895.055.  It was, therefore, reasonable for Sun Life to attempt to gather information in connection with its review of the claim in order to confirm the validity of the Policy, which is precisely what Sun Life was doing when Plaintiff commenced this action. Moreover, it was reasonable for Sun Life, to the extent the Policy is determined to be valid, to gather information in connection with its review of the claim in order to confirm that Wisconsin Statute § 631.07(4) supports payment to Plaintiff as opposed to another party having an insurable interest in the life of Mr. Margolin, which is precisely what Sun Life was doing when Plaintiff commenced this action.  Sun Life has acted reasonably in its review of the claim and in attempting to determine its obligations, if any, with respect to the purported policy.  Moreover, to the extent it is valid, the Policy states that proceeds will be paid upon receipt of Due Proof, which is defined as "[s]uch evidence as we may reasonably require in order to establish the Policy Proceeds or any other benefits are due and payable."  Despite a request from Sun Life, Plaintiff has refused to provide information reasonably required to make the determinations discussed above, and has therefore not submitted the Due Proof required by the Policy.  To the extent the allegations contained in this paragraph refer to the Policy, the Policy, to the extent it is valid, is a document that speaks for itself.  Any and all inaccurate interpretations or characterizations of the Policy, to the extent it is valid, are denied.  To the extent the remaining allegations in this paragraph constitute conclusions of law, they are denied.  All remaining allegations are denied.

29.     Denied.  To the extent the allegations contained in this paragraph are conclusions of law, they are denied.  To the extent the allegations refer to the Policy, the Policy, to the extent

it is valid, is a document that speaks for itself.  Any and all inaccurate interpretations or characterizations of the Policy, to the extent it is valid, are denied.

30.     Admitted in part.  Denied in part.  It is admitted that, in 2007, Sun Life issued the Policy.  Sun Life lacks knowledge and information at this time sufficient to form a belief as to whether the Policy was ever valid, and therefore denies any allegation as to the Policy's validity.  To the extent the allegations in this paragraph refer to the Policy, the Policy, to the extent it is valid, is a document that speaks for itself.  Any and all inaccurate interpretations or characterizations of the Policy, to the extent it is valid, are denied.  To the extent the remaining allegations in this paragraph state conclusions of law, they are denied.  By way further response, Sun Life denies that it has refused to pay Plaintiff's claim, that Plaintiff submitted the complete proof of claim required by the Policy or that Sun Life has acted improperly.  At the present time, it is, upon information and belief, fairly debatable whether the Policy was validly procured in good faith for the security or indemnity of Mr. Margolin, or whether it was procured as an illegal wagering contract that is void from inception pursuant to Wisconsin Statute § 895.055.  It was, therefore, reasonable for Sun Life to attempt to gather information in connection with its review of the claim in order to confirm the validity of the Policy, which is precisely what Sun Life was doing when Plaintiff commenced this action.  Moreover, it was reasonable for Sun Life, to the extent the Policy is determined to be valid, to gather information in connection with its review of the claim in order to confirm that Wisconsin Statute § 631.07(4) supports payment to Plaintiff as opposed to another party having an insurable interest in the life of Mr. Margolin, which is precisely what Sun Life was doing when Plaintiff commenced this action.  Sun Life has acted reasonably in its review of the claim and in attempting to determine its obligations, if any, with respect to the purported policy.  Moreover, to the extent it is valid, the Policy states that proceeds

will be paid upon receipt of Due Proof, which is defined as "[s]uch evidence as we may reasonably require in order to establish the Policy Proceeds or any other benefits are due and payable." Despite a request from Sun Life, Plaintiff has refused to provide information reasonably required to make the determinations discussed above, and has therefore not submitted the Due Proof required by the Policy. All remaining allegations are denied.

31.     Admitted in part. Denied in part. It is admitted that premiums were received sufficient to keep the Policy, to the extent it is valid, from lapsing. To the extent the remaining allegations in this paragraph state conclusions of law, they are denied. By way of further response, Sun Life denies that it has acted improperly. At the present time, it is, upon information and belief, fairly debatable whether the Policy was validly procured in good faith for the security or indemnity of Mr. Margolin, or whether it was procured as an illegal wagering contract that is void from inception pursuant to Wisconsin Statute § 895.055. It was, therefore, reasonable for Sun Life to attempt to gather information in connection with its review of the claim in order to confirm the validity of the Policy, which is precisely what Sun Life was doing when Plaintiff commenced this action. Moreover, it was reasonable for Sun Life, to the extent the Policy is determined to be valid, to gather information in connection with its review of the claim in order to confirm that Wisconsin Statute § 631.07(4) supports payment to Plaintiff as opposed to another party having an insurable interest in the life of Mr. Margolin, which is precisely what Sun Life was doing when Plaintiff commenced this action. Sun Life has acted reasonably in its review of the claim and in attempting to determine its obligations, if any, with respect to the purported policy. All remaining allegations are denied.

32.     The allegations in this paragraph constitute conclusions of law to which no response is required. To the extent a response is required, these allegations are denied. To the

extent the allegations refer to written documents, those documents speak for themselves.  Any and all inaccurate interpretations or characterizations of those documents are denied.

33.     The allegations in this paragraph constitute conclusions of law to which no response is required.  To the extent a response is required, Sun Life denies that it has acted improperly.  At the present time, it is, upon information and belief, fairly debatable whether the Policy was validly procured in good faith for the security or indemnity of Mr. Margolin, or whether it was procured as an illegal wagering contract that is void from inception pursuant to Wisconsin Statute § 895.055.  It was, therefore, reasonable for Sun Life to attempt to gather information in connection with its review of the claim in order to confirm the validity of the Policy, which is precisely what Sun Life was doing when Plaintiff commenced this action.  Moreover, it was reasonable for Sun Life, to the extent the Policy is determined to be valid, to gather information in connection with its review of the claim in order to confirm that Wisconsin Statute § 631.07(4) supports payment to Plaintiff as opposed to another party having an insurable interest in the life of Mr. Margolin, which is precisely what Sun Life was doing when Plaintiff commenced this action.  Sun Life has acted reasonably in its review of the claim and in attempting to determine its obligations, if any, with respect to the purported policy.  All remaining allegations are denied.

34.     Denied.

35.     The allegations in this paragraph constitute conclusions of law to which no response is required.  To the extent a response is required, Sun Life denies that it has refused to pay Plaintiff's claim, that Plaintiff submitted the complete proof of claim required by the Policy or that Sun Life has acted improperly.  At the present time, it is, upon information and belief, fairly debatable whether the Policy was validly procured in good faith for the security or

indemnity of Mr. Margolin, or whether it was procured as an illegal wagering contract that is void from inception pursuant to Wisconsin Statute § 895.055.  It was, therefore, reasonable for Sun Life to attempt to gather information in connection with its review of the claim in order to confirm the validity of the Policy, which is precisely what Sun Life was doing when Plaintiff commenced this action.  Moreover, it was reasonable for Sun Life, to the extent the Policy is determined to be valid, to gather information in connection with its review of the claim in order to confirm that Wisconsin Statute § 631.07(4) supports payment to Plaintiff as opposed to another party having an insurable interest in the life of Mr. Margolin, which is precisely what Sun Life was doing when Plaintiff commenced this action.  Sun Life has acted reasonably in its review of the claim and in attempting to determine its obligations, if any, with respect to the purported policy.  Moreover, to the extent it is valid, the Policy states that proceeds will be paid upon receipt of Due Proof, which is defined as "[s]uch evidence as we may reasonably require in order to establish the Policy Proceeds or any other benefits are due and payable."  Despite a request from Sun Life, Plaintiff has refused to provide information reasonably required to make the determinations discussed above, and has therefore not submitted the Due Proof required by the Policy.  All remaining allegations are denied.

## COUNT I

## BREACH OF CONTRACT

36.     Sun Life incorporates by reference each of its answers to the allegations made at paragraphs 1 through 35, inclusive.

37.     Denied.

38.     Denied.  To the extent the allegations in this paragraph refer to the Policy, the Policy, to the extent it is valid, speaks for itself.  Any and all inaccurate interpretations or

characterizations of the Policy, to the extent it is valid, are denied.  The remaining allegations are denied.

39.     Admitted in part.  Denied in part.  It is admitted, upon information and belief, that Mr. Margolin died on or about April 3, 2014.  It is admitted that Sun Life received a death certificate pertaining to Mr. Margolin.  To the extent the allegations in this paragraph refer to the Policy, the Policy, to the extent it is valid, is a document that speaks for itself.  Any and all inaccurate interpretations or characterizations of the Policy, to the extent it is valid, are denied.  To the extent this paragraph contains conclusions of law, they are denied.  All remaining allegations are denied.

40.     Denied.

41.     Denied.

## COUNT II

## STATUTORY PREJUDGMENT INTEREST FOR UNTIMELY PAYMENT

42.     Sun Life incorporates by reference each of its answers to the allegations made at paragraphs 1 through 41, inclusive.

43.     The allegations in this paragraph constitute conclusions of law to which no response is required.  To the extent a response is required, these allegations are denied.

44.     Admitted in part.  Denied in part.  It is admitted only that Sun Life received a copy of Mr. Margolin's death certificate and a proof of claim form and that Sun Life continues to evaluate the claim.  All other allegations are denied.

45.     Denied.  Sun Life denies that it has failed to play the Plaintiff's claim, that the Plaintiff has submitted the required proof of loss, or that Sun Life has acted improperly.  At the present time, it is, upon information and belief, fairly debatable whether the Policy was validly procured in good faith for the security or indemnity of Mr. Margolin, or whether it was procured

as an illegal wagering contract that is void from inception pursuant to Wisconsin Statute § 895.055. It was, therefore, reasonable for Sun Life to attempt to gather information in connection with its review of the claim in order to confirm the validity of the Policy, which is precisely what Sun Life was doing when Plaintiff commenced this action. Moreover, it was reasonable for Sun Life, to the extent the Policy is determined to be valid, to gather information in connection with its review of the claim in order to confirm that Wisconsin Statute § 631.07(4) supports payment to Plaintiff as opposed to another party having an insurable interest in the life of Mr. Margolin, which is precisely what Sun Life was doing when Plaintiff commenced this action. Sun Life has acted reasonably in its review of the claim and in attempting to determine its obligations, if any, with respect to the purported policy. Moreover, to the extent it is valid, the Policy states that proceeds will be paid upon receipt of Due Proof, which is defined as "[s]uch evidence as we may reasonably require in order to establish the Policy Proceeds or any other benefits are due and payable." Despite a request from Sun Life, Plaintiff has refused to provide information reasonably required to make the determinations discussed above, and has therefore not submitted the Due Proof required by the Policy. To the extent the allegations contained in this paragraph are conclusions of law, they are denied. All remaining allegations are denied.

## COUNT III

## BAD FAITH

46.    Sun Life incorporates by reference each of its answers to the allegations made at paragraphs 1 through 45, inclusive.

47.    Denied. Sun Life denies that it has failed to pay benefits due under the Policy, that the Plaintiff has submitted the required proof of loss, or that Sun Life has acted improperly. At the present time, it is, upon information and belief, fairly debatable whether the Policy was

validly procured in good faith for the security or indemnity of Mr. Margolin, or whether it was procured as an illegal wagering contract that is void from inception pursuant to Wisconsin Statute § 895.055.  It was, therefore, reasonable for Sun Life to attempt to gather information in connection with its review of the claim in order to confirm the validity of the Policy, which is precisely what Sun Life was doing when Plaintiff commenced this action.  Moreover, it was reasonable for Sun Life, to the extent the Policy is determined to be valid, to gather information in connection with its review of the claim in order to confirm that Wisconsin Statute § 631.07(4) supports payment to Plaintiff as opposed to another party having an insurable interest in the life of Mr. Margolin, which is precisely what Sun Life was doing when Plaintiff commenced this action.  Sun Life has acted reasonably in its review of the claim and in attempting to determine its obligations, if any, with respect to the purported policy.  Moreover, to the extent it is valid, the Policy states that proceeds will be paid upon receipt of Due Proof, which is defined as "[s]uch evidence as we may reasonably require in order to establish the Policy Proceeds or any other benefits are due and payable."  Despite a request from Sun Life, Plaintiff has refused to provide information reasonably required to make the determinations discussed above, and has therefore not submitted the Due Proof required by the Policy.  To the extent the allegations contained in this paragraph are conclusions of law, they are denied.  All remaining allegations are denied.

48.    Denied.

49.    Denied.  Sun Life denies that it has failed to pay benefits due under the Policy, that the Plaintiff has submitted the required proof of loss, or that Sun Life has acted improperly. At the present time, it is, upon information and belief, fairly debatable whether the Policy was validly procured in good faith for the security or indemnity of Mr. Margolin, or whether it was

procured as an illegal wagering contract that is void from inception pursuant to Wisconsin

Statute § 895.055.  It was, therefore, reasonable for Sun Life to attempt to gather information in

connection with its review of the claim in order to confirm the validity of the Policy, which is

precisely what Sun Life was doing when Plaintiff commenced this action.  Moreover, it was

reasonable for Sun Life, to the extent the Policy is determined to be valid, to gather information

in connection with its review of the claim in order to confirm that Wisconsin Statute § 631.07(4)

supports payment to Plaintiff as opposed to another party having an insurable interest in the life

of Mr. Margolin, which is precisely what Sun Life was doing when Plaintiff commenced this

action.  Sun Life has acted reasonably in its review of the claim and in attempting to determine

its obligations, if any, with respect to the purported policy.  Moreover, to the extent it is valid,

the Policy states that proceeds will be paid upon receipt of Due Proof, which is defined as

"[s]uch evidence as we may reasonably require in order to establish the Policy Proceeds or any

other benefits are due and payable."  Despite a request from Sun Life, Plaintiff has refused to

provide information reasonably required to make the determinations discussed above, and has

therefore not submitted the Due Proof required by the Policy.  To the extent the allegations

contained in this paragraph are conclusions of law, they are denied.  All remaining allegations

are denied.

## **RESPONSE TO PLAINTIFF'S WHEREFORE CLAUSE**

50.    Sun Life denies that Plaintiff is entitled to the relief it seeks in this paragraph.

51.    Sun Life denies that Plaintiff is entitled to the relief it seeks in this paragraph.

52.    Sun Life denies that Plaintiff is entitled to the relief it seeks in this paragraph.

53.    Sun Life denies that Plaintiff is entitled to the relief it seeks in this paragraph.

54.    Sun Life denies that Plaintiff is entitled to the relief it seeks in this paragraph.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

The Complaint is barred, in whole or in part, by the doctrines of waiver, estoppel and/or equitable estoppel.

### Third Affirmative Defense

The Complaint is barred, in whole or in part, by the doctrine of unclean hands.

### Fourth Affirmative Defense

The Complaint is barred, in whole or in part, by the doctrine of *uberrimae fidei.*

### Fifth Affirmative Defense

The Complaint is barred, in whole or in part, by the fraud, concealment, deceit, acts and/or omissions of the applicants for the policy and/or those involved in the procurement of the policy.

### Sixth Affirmative Defense

The Complaint is barred, in whole or in part, by Plaintiff's failure to provide Due Proof as required by the Policy.

### Seventh Affirmative Defense

The Complaint is barred, in whole or in part, by Plaintiff's failure to cooperate with Sun Life's claim review.

### Eighth Affirmative Defense

The Complaint is barred, in whole or in part, by Wisconsin Statute § 631.83(4).

### Ninth Affirmative Defense

The Complaint is barred, in whole or in part, by the terms and conditions of the Policy.

## Tenth Affirmative Defense

The Complaint is barred, in whole or in part, by Plaintiff's failure to mitigate its alleged damages, if any.

## Eleventh Affirmative Defense

The Complaint is barred, in whole or in part, by Wisconsin Statute § 895.055, prohibiting wagering agreements and rendering them void.

## Twelfth Affirmative Defense

The Complaint is barred, in whole or in part, by Wisconsin Statute § 631.07(4).

## Thirteenth Affirmative Defense

The Complaint is barred, in whole or in part, because the Policy is void *ab initio* for lack of a meeting of the minds.

## Fourteenth Affirmative Defense

Sun Life reserves the right to amend this pleading to include further affirmative defenses that may become known during the course of discovery.

## Fifteenth Affirmative Defense

The Complaint is barred by the fact that, at the present time, it is, upon information and belief, fairly debatable whether the policy was validly issued or whether it was procured as an illegal wagering contract and whether, for that reason, it is void from inception.  It was, therefore, reasonable for Sun Life to attempt to gather information in connection with its review of the claim in order to confirm the validity of the policy, which is precisely what Sun Life was doing when Plaintiff commenced this action.  Moreover, it was reasonable for Sun Life, to the extent the policy is determined to be valid, to gather information in connection with its review of the claim in order to confirm that Wisconsin Statute § 631.07(4) supports payment to Plaintiff as

opposed to another party having an insurable interest in the life of Mr. Margolin, which is precisely what Sun Life was doing when Plaintiff commenced this action.  Sun Life has acted reasonably in its review of the claim and in attempting to determine its obligations, if any, with respect to the purported policy.

WHEREFORE, Sun Life demands judgment dismissing Plaintiff's Complaint, together with costs and such other relief as the Court deems just and proper.

## COUNTERCLAIMS

Defendant/Counterclaim Plaintiff, Sun Life Assurance Company of Canada ("Sun Life"), files and asserts its Counterclaim against Plaintiff/Counterclaim Defendant U.S. Bank, National Association, as Securities Intermediary (the "Counterclaim Defendant") and, in support thereof, alleges and says:

## INTRODUCTION

1.    Sun Life hereby asserts a counterclaim seeking a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, stemming from the procurement of the Policy on the life of Charles Margolin ("Mr. Margolin") and a claim for the death benefit under that Policy submitted to Sun Life by Counterclaim Defendant.  Specifically, Sun Life seeks a declaratory judgment as to whether the Policy is valid or void because it is an illegal wagering contract. Alternatively, to the extent the Policy is deemed not to be void as an illegal wagering contract, Sun Life seeks a declaratory judgment as to whether the Policy was supported by an insurable interest at its inception and, if not, whether benefits under the Policy should be paid to the Counterclaim Defendant or some other party that may be equitably entitled to those benefits.

2.    Sun Life is entitled to the declaratory relief it seeks because it is unclear whether the Policy was, from its inception, an illegal wagering contract on the life of Mr. Margolin.  The

facts and circumstances surrounding the application and procurement of the Policy raise issues concerning whether the Policy was issued in good faith for the security or indemnity of Mr. Margolin.  Specifically, there are outstanding questions regarding (i) whether there was an agreement or understanding at the time the Policy was issued that the Policy was a mere wager on the life of Mr. Margolin and was to be assigned or sold to a stranger-investor; (ii) whether the Policy was intended to protect against an actual risk of loss facing Mr. Margolin's family in the event of his death or whether it was procured to allow strangers to illegally gamble on the his life and profit from his death; and (iii) whether Mr. Margolin paid any premium toward the Policy or whether strangers to Mr. Margolin paid the premium on the Policy for the purposes of facilitating a wager on his life.  Accordingly, there is an actual controversy as to whether the policy is an illegal wagering contract and, thus, whether it is void *ab initio*.

3.      Sun Life seeks equitable relief in the form of a declaration regarding whether the Policy is void *ab initio* because it was an illegal wagering contract.  Sun Life also seeks equitable relief in the form of a declaration regarding whether Sun Life is entitled to offset any return of premium against the costs and other losses it incurred in connection with the Policy.

4.      In the alternative, should this Court find the Policy valid, Sun Life seeks a declaratory judgment regarding whether the Policy was supported by an insurable interest at inception, and, if not, whether the Counterclaim Defendant is the rightful beneficiary of the death benefit of the Policy.

## **PARTIES**

5.      Plaintiff, Sun Life Assurance Company of Canada, is a life insurance company organized and existing under the laws of Canada, with its principal place of business at One Sun

Life Executive Park, Wellesley Hills, Massachusetts.  Sun Life is a citizen of the Commonwealth of Massachusetts.

6.      Upon information and belief, Counterclaim Defendant, U.S. Bank, N.A., as Securities Intermediary, is a national banking association with its principal place of business located at and maintains its principal place of business at 425 Walnut Street, Cincinnati, Ohio 45202.  U.S. Bank, N.A., as Securities Intermediary, is a citizen of the State of Ohio.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States, particularly the Declaratory Judgment Act, 28 U.S.C. § 2201.  This Court also has jurisdiction under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

8.      Venue is proper in the Western District of Wisconsin pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events giving rise to each of the claims occurred herein.  Among other things, the Policy was applied for by and issued to an entity purporting to be a trust established under Wisconsin law, having, as its trustee, a Wisconsin entity; the application was purportedly signed in Wisconsin; and the policy was purportedly delivered and signed for in Wisconsin.

## FACTUAL BACKGROUND

9.      On or about February 13, 2007, Sun Life received an application seeking $6 million in life insurance coverage on the life of Mr. Margolin (the "Application").  A copy of the Application is attached as **Exhibit A**.  At the time of the Application, Mr. Margolin was eighty-one years of age.

10. The application was submitted by DeWitt Ross & Stevens, S.C. ("DeWitt Ross"). DeWitt Ross represented to Sun Life that it was the trustee of the recently established Charles B. Margolin 2007-I Insurance Trust, dated 1/15/2007.  According to the Application, the Trust was to act as the owner, beneficiary, and payor of the proposed Policy.

11. The Application states that the insurance on the life of Mr. Margolin was being sought for estate planning needs.  **Exhibit A**, at 4.

12. Mr. Margolin, as the proposed insured, signed the Application on February 13, 2007.  The Application was also signed by the Trustee and the insurance producer, Kevin Burke ("Mr. Burke").  The signatures purport to have been placed on the application in Madison, Wisconsin.  The "Signature Section" of the Application also contained declarations by Mr. Margolin, the Trustee and Mr. Burke that "the statements and answers in this Application are complete and true to the best of my/our knowledge and believe that they are correctly recorded." **Exhibit A**, at 6.

13. Thus, in completing the Application, the signatories knew that they were required to provide truthful, accurate, and honest responses to the questions presented.  Furthermore, they knew that Sun Life would rely upon the statements recorded on the Application in determining whether to issue the Policy with the face amount requested, or whether to issue the Policy at all.

14. In connection with the Application, Sun Life also required the submission of a Life Insurance Source of Premium Eligibility Worksheet (the "Worksheet").  On the Worksheet, signed on January 23, 2007, Mr. Burke certified that the premium for the Policy would not be financed by a loan, either at the time of issuance or in the future.  A true and correct copy of the Worksheet is attached hereto as **Exhibit B**.

15.     On or about February 13, 2007, in reliance upon the representations contained in the Application and other documents and information submitted to Sun Life in conjunction with the Application, Sun Life issued the Policy.

16.     An initial premium payment of $307,135 was made for the Policy via wire transfer on or about February 13, 2007.  Upon information and belief, the source of the funds for the initial premium payment may have been a person or entity facilitating the procurement of a wagering contract on the life of Mr. Margolin.

17.     While the Trust remained the record owner of the Policy, subsequent premium payments for the Policy were also made via wire transfers.  Upon information and belief, the source of the funds for these premium payments may have been a person or entity facilitating the maintenance of a wagering contract on the life of Mr. Margolin.

18.     During the time when the Trust remained the record owner of the Policy, the Policy was minimally funded.  In other words, premiums received were insufficient to keep the Policy's account value positive, and the Policy (to the extent it was ever validly issued) was kept in force solely by the Policy's lapse protection provisions.  As a result, many of the features of the Policy that are attractive for estate planning purposes (such as the ability to accumulate interest tax-free on excess premium payments) were not being utilized.  Such behavior is common when a policy has been procured as a wager for the benefit of strangers rather than for the indemnity and security of the insured.

19.     Beginning in October 2008 (just before the Policy's second anniversary date), Sun Life began receiving requests from DeWitt Ross on a monthly (and sometimes more frequent) basis.  These requests sought certain information about the Policy – such as confirmation that the Policy remained in force, the current values of the policies, the amount and date of the latest

deductions from the policy account value, and the total premiums paid to date on the policy – as well as illustrations showing the minimum premium payments that needed to be made in order to keep the Policy in force.  Again, such behavior is common when a policy has been procured as a wager for the benefit of strangers rather than for the indemnity and security of the insured.

20.    On or about March 19, 2011, DeWitt Ross (on behalf of the Trust) executed an ownership change request form naming Counterclaim Defendant (as securities intermediary) as the new owner of the Policy.  The purpose of the change of ownership stated on this form was "for administrative purposes."

21.    On or about March 20, 2011, Counterclaim Defendant executed a beneficiary change request form naming itself as the new beneficiary of the Policy.

22.    For an unknown reason, these forms were not provided to Sun Life until on or about May 20, 2011, at which point the owner and beneficiary of record for the Policy were changed to Counterclaim Defendant.

23.    The party for whom Counterclaim Defendant serves as Securities Intermediary was not (and still has not been) identified.

24.    Following the change in record ownership of the Policy, Counterclaim Defendant continued to minimally fund the Policy through periodic wire transfers.

25.    Following the change in record ownership of the Policy, Sun Life received requests from a representative of Counterclaim Defendant approximately on a monthly (or sometimes more frequent) basis seeking the same type of information about the Policy described above.

26.    After Mr. Margolin's death in April 2014, Counterclaim Defendant submitted a claim for the death benefit due under the policy.

## COUNTERCLAIM I

## DECLARATORY JUDGMENT – ILLEGAL WAGERING CONTRACT

27.     Sun Life hereby incorporates by reference each and every allegation contained in the preceding paragraphs 1-26 as if set forth herein at length.

28.     Pursuant to 28 U.S.C. § 2201(a), "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

29.     An actual, justiciable controversy exists between the parties.  Specifically, Counterclaim Defendant has asserted a claim to the death benefits under the Policy and has alleged that Sun Life has already breached the Policy and committed bad faith because it has not yet paid the claim.  However, if the Policy is void *ab initio*, as Sun Life believes may be the case, there is no valid contract and thus no claim to pay.

30.     Wisconsin Statute § 895.055 prohibits the entry into a wagering agreement and renders any such agreements void, to wit:

> (1)  All promises, agreements, notes, bills, bonds, or other contracts, mortgages, conveyances or other securities, where the whole or any part of the consideration of the promise, agreement, note, bill, bond, mortgage, conveyance or other security shall be for money or other valuable thing whatsoever won or lost, laid or staked, or betted at or upon any game of any kind or under any name whatsoever, or by any means, or upon any race, fight, sport or pastime, or any wager, or for the repayment of money or other thing of value, lent or advanced at the time and for the purpose, of any game, play, bet or wager, or of being laid, staked, betted or wagered thereon shall be void.

> *****

> (2)  This section does not apply to contracts of insurance made in good faith for the security or indemnity of the party insured.

31.    The Policy here bears certain specific characteristics of a classic wagering policy procured not for the security or indemnity of Mr. Margolin (*i.e.*, for estate planning purposes) but rather by and for the benefit of strangers with a desire to wager upon Mr. Margolin's untimely demise.  For example:

- The application was for a $6,000,000 policy on an eighty-one year-old man;

- The Application sought an individual life insurance policy as opposed to a joint-survivorship policy (as would be expected if the true purpose of the Policy was estate planning);

- The Application names as owner, beneficiary, and payor a newly-formed trust;

- The Trust was purported established in Wisconsin and the named trustee was, upon information and belief, a Wisconsin entity, but Mr. Margolin was a California resident with, upon information and belief, no prior connection to the state of Wisconsin;

- Upon information and belief, Mr. Margolin's family members (*i.e.*, those for whose benefit his estate needed protection) were unaware of the existence of the Policy;

- Upon information and belief, Mr. Margolin lacked the finances to devote to the payment of the Policy premiums, including the initial premium payment of approximately $300,000;

- The Policy was minimally funded from inception, which is consistent with investor-owned behavior;

- Shortly before the Policy's second anniversary date, DeWitt Ross began a pattern of periodically requesting detailed information about the Policy that is consistent with investor-owned behavior; and

- Record ownership of the Policy was transferred within a few years after the expiration of the contestability period. The fact that record ownership was transferred "for administrative purposes" suggests that a purported transfer may have happened long before record ownership was ever changed. In either case, this is inconsistent with a desire for estate protection.

32.     Upon information and belief, the Policy may not have been procured in good faith to protect or indemnify Mr. Margolin or his beneficiaries against any existing risks.

33.     Upon information and belief, the Policy may have been procured by and for the benefit of stranger-investors with the intent to wager upon Mr. Margolin's untimely demise, creating the very risk being protected or indemnified against.

34.     For the reasons set forth herein, Sun Life seeks a judicial declaration as to whether the Policy was procured in bad faith for a purpose other than the security and indemnity of Mr. Margolin and was thus void *ab initio* pursuant to Wisconsin Statute § 895.055.

35.     If this Court declares that the Policy is void *ab initio*, Sun Life seeks a judicial declaration that it is entitled to retain premium paid to offset the costs and other losses it incurred in connection with the Policy.

## RELIEF REQUESTED

WHEREFORE, Sun Life respectfully requests the entry of an Order by this Court as follows:

A.       Declaring whether the Policy is void *ab initio* due to it having been procured as a wagering contract on the life of Mr. Margolin;

B.       Declaring whether Sun Life is entitled to retain some or the entire premium paid to it in connection with the Policy to offset the costs and other losses Sun Life incurred in connection with the Policy;

C.       Awarding Sun Life its attorneys' fees and costs associated with seeking this judgment, as determined by the Court; and

D.       Awarding of such further relief as this Court deems appropriate.

## COUNTER CLAIM II

### (*IN THE ALTERNATIVE*)

### DECLARATORY JUDGMENT – LACK OF INSURABLE INTEREST

36.       Sun Life hereby incorporates by reference each and every allegation of fact contained in the preceding paragraphs 1-35, as if set forth herein at length.

37.       In the alternative, if this Court determines the Policy to be valid, Sun Life seeks a declaration as to whether the Policy lacked an insurable interest at inception and, if so, whether Counterclaim Defendant (as opposed to some other third party) is entitled to the death benefits under the Policy.

38.       Pursuant to 28 U.S.C. § 2201(a), "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such

declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

39.     An actual, justiciable controversy exists between the parties.  Specifically, Counterclaim Defendant has asserted a claim to the death benefit under the Policy and has alleged that Sun Life has already breached the Policy and committed bad faith because it has not yet paid the claim.  However, if the Policy was not supported by an insurable interest at inception, as Sun Life believes may be the case, the death benefit under the Policy may not be payable to Counterclaim Defendant.

40.     Wisconsin Statute § 631.07(4) provides that a Court may order the death benefit of a policy that was not supported by an insurable interest at inception to be paid not to the beneficiary of record, but to another party equitably entitled to the death benefit, to wit:

> No insurance policy is invalid merely because the policyholder lacks insurable interest . . . but a court with appropriate jurisdiction may order the proceeds to be paid to someone other than the person to whom the policy is designated to be payable, who is equitably entitled thereto, or may create a constructive trust in the proceeds or a part thereof, subject to terms and conditions of the policy other than those relating to insurable interest . . . [.]

41.     Upon information and belief, and for the reasons set forth above, the Policy lacked an insurable interest at its inception, having been procured by and for the benefit of stranger-investors with no insurable interest in Mr. Margolin's life.

42.     In light of the above, Sun Life seeks a declaration of whether Counterclaim Defendant is entitled to the death benefit proceeds or whether they should be paid to a third-party entitled to such proceeds in equity.

## **RELIEF REQUESTED**

WHEREFORE, Sun Life respectfully requests the entry of an Order by this Court as follows:

A.      Declaring whether the Policy lacked an insurable interest at inception as required by Wisconsin law;

B.      If the Policy lacked an insurable interest at inception as required by Wisconsin law, declaring whether the death benefit proceeds should be paid to Counterclaim Defendant or to a third party entitled to such proceeds in equity;

C.      Awarding Sun Life its attorneys' fees and costs associated with seeking this judgment, as determined by the Court; and

D.      Awarding of such further relief as this Court deems appropriate.

[SIGNATURE BLOCK ON FOLLOWING PAGE]

Dated:  December 10, 2014

Respectfully submitted,

/s/ John M. Moore
Jason P. Gosselin
Jason.gosselin@dbr.com
John M. Moore
John.moore@dbr.com
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
Telephone:  (215) 988-2700
Fax:  (215) 988-2757

Timothy M. Hansen
thansen@hrdclaw.com
James B. Barton
jbarton@hrdclaw.com
HANSEN REYNOLDS DICKINSON CRUEGER LLC
316 N. Milwaukee Street, Suite 200
Milwaukee, WI  53202
Telephone:  (414) 273-8473
Fax:  (414) 273-8476

**Attorneys for Defendant Sun Life Assurance Company of Canada**

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on this date I caused a true and correct copy of

the Amended Answer of Defendant Sun Life Assurance Company of Canada to the Complaint,

Together with Affirmative Defenses and Counterclaims, which will provide notice to:

Eric J. Wilson
ewilson@gklaw.com
Kendall Harrison
kharriso@gklaw.com
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, WI  53701-2719
Telephone:  (608) 257-3911
Fax:  (608) 257-0609

John E. Failla
Nathan Lander
PROSKAUER ROSE LLP
11 Times Square
New York, NY  10036
Telephone:  (212) 969-3000

*Attorneys for Plaintiff U.S. Bank National Association, as Securities Intermediary*

Dated:  December 10, 2014        By:  __/s/ John M. Moore_____
                                 John M. Moore
                                 DRINKER BIDDLE & REATH, LLP
                                 One Logan Square, Suite 2000
                                 Philadelphia, PA  19103
                                 Telephone:  (215) 988-2700
                                 Fax: (215) 988-2757
                                 john.moore@dbr.com