IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

U.S. BANK NATIONAL ASSOCIATION,

    Plaintiff,                                               OPINION AND ORDER

    v.                                                          14-cv-562-wmc

SUN LIFE ASSURANCE COMPANY OF CANADA,

    Defendant.
_____

Plaintiff U.S. Bank National Association claims that defendant Sun Life Assurance Company of Canada improperly withheld life insurance proceeds to which it is entitled. Following Sun Life's filing of an amended answer and counterclaims, U.S. Bank renewed its motion for judgment on the pleadings with regard to (1) its breach-of-contract claim and (2) Sun Life's two counterclaims. (Dkt. #43.)[1] The court concludes that Sun Life's only defense and related counterclaim -- both of which assert that its insurance policy is void as an unenforceable wagering contract -- are meritless under settled Wisconsin law. Accordingly, the court will grant U.S. Bank's motion for judgment on the pleadings with regard to its breach of contract claim and Sun Life's illegal wagering contract counterclaim. The court will also grant U.S. Bank's motion for judgment on the pleadings with regard to Sun Life's second counterclaim for declaratory judgment based on its failure to plead an actual case or controversy between the parties in suit or other interested parties.

---

[1] Plaintiff did not move for judgment on the pleadings on its claims for bad faith or for statutory prejudgment interest on the untimely payment.

1

ALLEGATIONS OF FACT[2]

On January 30, 2007, Charles Margolin, already 81 years young, purchased a $6 million life insurance policy with Sun Life ("the Policy"). (Am. Answer (dkt. #40) ¶ 16.) The Policy named as beneficiary something called the "Margolin Trust." (*Id.* at ¶ 18.) Ostensibly because it believed this arrangement was part of legitimate estate planning, Sun Life issued the policy with the initial beneficiary located in Wisconsin and the Policy delivered to Wisconsin. (*Id.* at ¶¶ 18-19.) From 2007 until Mr. Margolin's death in 2014, all premiums due under the Policy, totaling in excess of $2.4 million, were timely paid and accepted by Sun Life. (*Id.* at ¶ 23.)

As written, the Policy allowed Mr. Margolin to transfer ownership or to change the beneficiary by providing Sun Life with written notice of the change. (Declaration of Nathan R. Lander, Ex. 1 (the "Policy") (dkt. #45-1) p.15.) Under the Policy's terms, once Sun Life acknowledged receipt of the notice changing ownership or beneficiary rights, the change took effect either on the date the notice was signed or a date specified in the notice. (*Id.*) Mr. Margolin provided written notice in May 2011, more than four years after the Policy issued, naming U.S. Bank as the owner and beneficiary of the Policy, as a "securities intermediary." (Am. Answer (dkt. #40) ¶ 22.) After Sun Life acknowledged this notice, U.S. Bank became the owner and beneficiary of record and took over paying premiums from Mr. Margolin until his death on April 2, 2014. (*Id.* at ¶¶ 22, 24.)

---

[2] For purposes of judgment on the pleadings, the court views the facts in the light most favorable to the non-moving party. *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (citing *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012)).

The Policy calls for Sun Life "to pay the Beneficiary such amounts as are due and payable upon receipt of Due Proof of the Insured's death." (Policy at p.2.) "Due Proof" is defined in the Policy as "[s]uch evidence as [Sun Life] may reasonably require in order to establish the Policy Proceeds or any other benefits are due and payable." (Policy at p.12.)

On May 30, 2014, U.S. Bank submitted Mr. Margolin's death certificate and a proof of claim form to Sun Life. (Am. Answer (dkt. #40) ¶ 25.) Nevertheless, Sun Life continues "to review" -- but apparently has still not formally denied -- U.S. Bank's claim to the Policy proceeds, ostensibly out of concern that the Policy may be an "illegal wagering contract." (*Id.* at ¶¶ 3, 26, 28.) In particular, Sun Life claims to be concerned about "certain specific characteristics of a classic wagering policy procured not for the security or indemnity of Mr. Margolin (*i.e.*, for estate planning purposes), but rather by and for the benefit of strangers with a desire to wager upon Mr. Margolin's untimely demise." (*Id*. at ¶ 31.) Virtually all of these "specific characteristics" were well known to Sun Life long before Mr. Margolin's demise, which did not prevent Sun Life from continuing to accept substantial, ongoing premium payments.

Regardless, Sun Life now maintains that the Policy was never valid, and therefore was not in force at the time of Mr. Margolin's death. (*Id.* at ¶ 23). Moreover, despite acknowledging the change in beneficiary at the time, Sun Life now claims that the 2011 transfer of ownership and beneficiary rights to U.S. Bank as "securities intermediary" was invalid. (*Id.* at ¶ 27.)

Ostensibly to determine the Policy's validity, Sun Life requested certain

3

documentation from U.S. Bank, in addition to the death certificate proving Mr. Margolin's death. (*Id.* at ¶ 23.) U.S. Bank refused to provide the requested information, choosing instead to file this lawsuit. (*Id.*)

OPINION

U.S. Bank has moved for judgment on the pleadings, relying primarily on a Wisconsin insurance statute that it asserts bars Sun Life's wagering-contract defense and counterclaim. (Pl.'s Br. (dkt. #44) 14-22.) A motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard as Rule 12(b)(6), except that the court considers not only the complaint and referenced documents, but all pleadings, as well as documents that are incorporated into *any* pleading by reference. *Buchanan-Moore v. City of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991). To succeed, "the moving party must demonstrate that there are no material issues of fact to be resolved," even with the court viewing all facts in the light most favorable to the nonmoving party. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). While the non-moving party's factual allegations are generally accepted as true in response to a 12(c) motion, "allegations in the form of legal conclusions are insufficient to survive." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (citing *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012)).

I. **Sun Life's Defense to Breach of Contract Claim and Counterclaim for Illegal Wagering Contract**

The parties do not dispute that a death certificate is adequate proof of Mr. Margolin's death. Rather, the parties dispute whether Sun Life is entitled to insist on additional evidence that the Policy proceeds are "due and payable." (Am. Answer (dkt. #40) ¶¶ 3, 25, 26, 27, 30, 35, 45.)

U.S. Bank first cast this as a simple question of policy interpretation, arguing that since the Policy only requires "Due Proof of the Insured's death," and since there is no dispute as to the insured's death, U.S. Bank need provide Sun Life no additional information regarding its right to the proceeds of the policy. As an initial matter, this argument ignores the Policy's definition of "Due Proof," as "[s]uch evidence as [Sun Life] may reasonably require in order to establish the Policy Proceeds or any other benefits are due and payable." Whatever this may entitle Sun Life to in the abstract, U.S. Bank argues persuasively that the only "Due Proof" required here is "of the Insured's death," which has already been satisfied, particularly in light of the fact that any ambiguity in the Policy is generally construed against an insurance company under Wisconsin law.

In the end, however, this argument comes down to meaningless semantics, since Sun Life's justification for not paying out the Policy Proceeds has nothing to do with what proof is required, but rather that the Policy is void as a matter of law. Indeed, Sun Life's principal defense to the claim for breach of contract is that it is entitled to further documentation that this is not a "classic wagering policy" before paying out its proceeds. Similarly, Sun Life's first counterclaim essentially boils down to the assertion that the Policy was a wager on Mr. Margolin's life and, therefore, void. (Am. Answ. (dkt. #40) ¶

5

Case: 3:14-cv-00562-wmc Document #: 55 Filed: 06/10/15 Page 6 of 12

31.)

In support of its right to additional documentation, Sun Life primarily relies on Wis. Stat. § 895.055(1), which provides in relevant part:

> All promises, agreements, notes, bills, bonds, or other contracts, mortgages, conveyances or other securities, where the whole or any part of the consideration of the promise, agreement, note, bill, bond, mortgage, conveyance or other security shall be for money or other valuable thing whatsoever won or lost, laid or staked, or betted at or upon any game of any kind or under any name whatsoever, or by any means, or upon any race, fight, sport or pastime, or any wager, or for the repayment of money or other thing of value, lent or advanced at the time and for the purpose, of any game, play, bet or wager, or of being laid, staked, betted or wagered thereon shall be void.

Sun Life argues that this statute would render the Policy void if it is a "wagering contract." (Am. Answer (dkt. #40) ¶¶ 3, 6, 26, 27, 28, 30, 31, 33, 35, 36.)

In response, U.S. Bank directs the court to Wis. Stat. § 631.07(4), which provides:

> No insurance policy is invalid merely because the policyholder lacks insurable interest or because consent has not been given, but a court with appropriate jurisdiction may order the proceeds to be paid to someone other than the person to whom the policy is designated to be payable, who is equitably entitled thereto, or may create a constructive trust in the proceeds or a part thereof, subject to terms and conditions of the policy other than those relating to insurable interest or consent.

Because § 631.07(4) controls over the general prohibition of § 895.055(1), U.S. Bank argues, Sun Life has "no wagering-contract" defense under Wisconsin law, since it simply falls within the "lack of insurable interest" defense now precluded by statute. The parties' core dispute, therefore, rests on a question of law: which statute governs the

6

Policy at issue.

Contrary to Sun Life's assertion, the basic answer to that question is *not* § 895.055(1), which has never been used to deny payment of life insurance proceeds under Wisconsin law.[3]  Regardless, the court agrees with U.S. Bank that Wisconsin Statute § 631.07(4) bars Sun Life's wagering-contract defense.  On the face of the statute, the disavowal of a lack of "insurable interest" as a basis for invalidity is certainly broad enough to encompass a wagering policy defense.  Any uncertainty on this point is answered by the comment to § 631.07(4), which explains that the Wisconsin Legislature had in mind precluding a claim of invalidity based on wagering on the insured's life at the time it adopted the statute.  *See* Wis. Stat. § 631.07(4), cmt. ("Insurable interest makes sense as an underwriting restriction but not as a prerequisite to the validity of an insurance policy. . . .  If viewed as a disincentive to *gambling*, it need only be pointed out that the house's cut is smaller in Las Vegas or at the local racetrack.") (emphasis added).[4]  Instead, the Wisconsin Legislature concluded that "[t]he best way to discourage insurers from issuing insurance policies to persons without insurable interest is to make them pay if they do, not to permit them freely to issue such policies knowing that they have a good public policy defense that lets them off the hook whenever a loss occurs." *Id.*

The court's disavowal of defendant's wagering defense also follows the well-established principle of statutory construction "that a specific statute prevails over a

---

[3] Similarly, Sun Life cites to *no* authority that the offer of life insurance, or indeed any form of insurance regulated by Wisconsin's Commissioner of Insurance, could run afoul of Article 4, § 24 of the Wisconsin Constitution despite its prohibition on the authorization of "gambling in any form."

[4] *See Webster's Third New Int'l Dictionary* 2569 (1971) (including "gamble" as a synonym for "wager" and defining the verb form of "wager" as "to lay as a gamble").

general statute." *Purcell v. Bank of Am.*, 659 F.3d 622, 625-26 (7th Cir. 2011) (citing *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976)). Here, § 631.07(4) addresses specific defenses that an insurance company may seek to assert against a claim to policy proceeds. As such, that statute trumps the general prohibition of wagering contracts set out in § 895.055.

Even assuming U.S. Bank is engaging in the type of activities Sun Life infers, this too does not bolster Sun Life's argument. This is not to say that Wisconsin has no interest in regulating "stranger-originated life insurance" or "STOLI" policies. On the contrary, Wisconsin has regulated one version of STOLI policies, known as "viatical settlements" since the mid-1990s -- following the growth of policies sold by the original insured for an amount less than the expected death benefit but greater than the cash surrender value or accelerated death benefit -- out of concern that those in desperate need of cash to pay high medical costs might be preyed upon. Wis. Legislative Council Act Memo, 2009 Wis. Act 334. As the parties acknowledge, the proliferation of these and similar STOLI agreements has been so great, that in more recent years, they have been bundled and sold to investors or third-party brokers willing to pay the premiums on those policies until expiration of the typical two-year contestability period has expired and then pay a cash sum in exchange for death benefits after the policyholder dies. *Id.* As a result, the Wisconsin Commissioner of Insurance recommended legislation to regulate this secondary market in life insurance policies, particularly for the protection of policyholders who may be unduly influenced or under other hardships rendering them vulnerable to fraud late in life. *Id.*

8

Wisconsin Act 334 was passed to do just that and became effective on November 1, 2010, but the parties acknowledge this new legislation does not apply retroactively and, thus, has no bearing on the Policy at issue here. *See* Wis. Stat. § 632.69; 2009 Wis. Act 344, § 17(1) ("The Act first applies to life settlement contracts and purchase agreements entered into on the effective date of this subsection [Nov. 1, 2010]."). Even this Act does not prevent STOLI policies, it simply requires certain disclosures. Accordingly, while Sun Life has pointed to a number of facts suggesting that U.S. Bank was acting as a "securities intermediary" to facilitate and, likely finance, the acquisition of STOLI agreements for interested, third-party investors, there is nothing in Wisconsin law that prohibited it from doing so at the time, and nothing that relieves Sun Life's obligation to pay out the proceeds of this life insurance policy upon proof of death.

Here, U.S. Bank alleges -- and Sun Life fails to dispute -- that it was the owner and beneficiary of the Policy, that all premiums due under the Policy had been paid, that it submitted proof of the insured's death, and that Sun Life has refused to pay out the Policy proceeds. This is enough to prove a breach of contract. *See Uebelacker v. Paula Allen Holdings, Inc.*, 464 F. Supp. 2d 791, 801 (W.D. Wis. 2006) ("To state a claim for breach of contract, plaintiff must allege (1) the existence of a contract creating obligations flowing from defendant to plaintiff; (2) a breach of those obligations; and (3) damages from the breach.") (citing *Nw. Motor Car, Inc. v. Pope*, 51 Wis. 2d 292, 296, 187 N.W.2d 200, 203 (1971)).

Under Wisconsin law, Sun Life cannot defend its breach of the contract based on the assertion that it was an illegal wagering contract. *See* Wis. Stat. §§ 631.07(4) ("No

insurance policy is invalid merely because the policyholder lacks insurable interest or because consent has not been given . . . ."), 632.46(1) ("Except . . . for nonpayment of premiums, no individual life insurance policy may be contested after it has been in force from the date of issue for 2 years during the lifetime of the person whose life is at risk."). On the pleadings, therefore, "there are no material issues of fact to be resolved" in the course of this litigation regarding Sun Life's breach of the contract. *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452. For these reasons, the court will grant U.S. Bank's motion for judgment on the pleadings with regards to its breach of contract claim and Sun Life's illegal wagering contract counterclaim.[5]

## II. Sun Life's Counterclaim for Declaratory Judgment

Sun Life also asserts a declaratory judgment counterclaim on the basis that if the Policy is not void, the court should allow it to look for other interested parties who may have a claim to the proceeds as provided in § 631.07(4). (Am. Answ. (dkt. #40) ¶ 37.) Pursuant to the Declaratory Judgment Act, the court can issue a declaratory judgment, "upon the filing of an appropriate pleading," regarding the "rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act, however, requires that an "actual controversy" exist "*between the parties to the declaratory judgment action.*" *Harris Trust & Sav. Bank v. E-II Holdings, Inc.*, 926 F.2d 636, 640 (7th Cir. 1991) (emphasis in original)

---

[5] Sun Life may be entitled to further information regarding the circumstances of Mr. Margolin's transfer of the Policy to U.S. Bank as it may pertain to the bad-faith claim against it, but that claim is not at issue in this motion. (Compl. (dkt. # 1) ¶¶ 46-49.)

(citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937)). The court will not "give advisory opinions about issues as to which there are not adverse parties before [it]." *Princeton Univ. v. Schmid*, 455 U.S. 100, 102 (1982).

Here, there is no controversy. Sun Life points to no claimants that rival U.S. Bank's claim to the Policy proceeds. Like the trustees in *Harris Trust & Savings Bank*, who sought to "raise issues on behalf of 'certain Holders,'" Sun Life seeks a declaratory judgment preserving the interests of unidentified individuals. *See Harris Trust & Sav. Bank*, 926 F.2d at 640 n.12. Sun Life and U.S. Bank are "the only parties to this suit and [Sun Life] . . . ha[s] failed to establish a dispute *between the parties*." *Id.* (emphasis in original). As such, the court lacks subject matter jurisdiction over Sun Life's claim that an unidentified interested party *may* seek to contest U.S. Bank's claim to the proceeds under the Policy.[6]

---

[6] The parties also dispute whether Sun Life has standing to bring its declaratory judgment counterclaim. (Pl.'s Br. (dkt. # 44) 26-29; Def.'s Br. (dkt. # 47) 18-19.) Because the court concludes that it does not have subject matter jurisdiction to make the requested declaratory judgment in the first place, due to the lack of an actual case or controversy, it is unnecessary to consider whether Sun Life has standing to bring the counterclaim. The same reasoning dooms Sun Life's request for equitable disbursement pursuant to § 631.07(4).

11

ORDER

IT IS ORDERED that plaintiff U.S. Bank's motion for partial judgment on the pleadings with respect to (1) its breach-of-contract claim, (2) defendant Sun Life's illegal-wagering-contract counterclaim, and (3) Sun Life's alternative request for declaratory judgment (dkt. #43) is GRANTED.

Entered this 10th day of June, 2015.

BY THE COURT:

/s/
_____
William M. Conley
District Judge